IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DARRON L. BECKER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BRINKS, aka Brinks, Inc.;<br>ALDON ARCHIBALD in his<br>capacity as a Brinks Dispatch<br>Manager; GARY YENCHIK in his<br>capacity as a Brinks Safety<br>Supervisor; BRIAN TRASIMAR in<br>his capacity as a Brinks<br>Assistant Branch Manager; and<br>JACK GARDNER, in his capacity<br>as a Brinks Branch Manager,<br><br>　　　　Defendants. | Case No. 2:09-CV-521-DAK<br><br><br><br>**REPORT AND RECOMMENDATION** |

Before the Court is a Motion for Summary Judgment filed by Defendants Brinks, Inc. (hereinafter "Brinks"), Aldon Archibald, Gary Yenchik, Brian Trasimar, and Jack Gardner (hereinafter collectively referred to as "Defendants"). (Doc. 32.) Defendants assert that summary judgment should be granted because no genuine issue of material fact exists as to the claims Mr. Becker asserts in his Complaint.

Having carefully reviewed the parties' pleadings and the record in this case, and having heard oral arguments on

Defendants' summary judgment motion, the Court recommends that Defendants' motion be granted.

## BACKGROUND

Brinks transports, protects, processes, and stores its customers' coins, currency, negotiable instruments, and other valuables (hereinafter "liability"). (Doc. 33-1 (Hess Affidavit).) Brinks hired Mr. Becker on June 12, 2001, as a part-time driver of its armored vehicles at the Salt Lake Armored Branch. (Doc. 33-3 (Gardner Affidavit).) Mr. Becker received and signed for a Brinks employee handbook, which made clear that Mr. Becker's employment was at-will. (*Id.*) Mr. Becker's manager was Defendant Jack Gardner. (*Id.*)

During the spring or summer of 2006, almost a year before Mr. Becker's employment with Brinks was terminated, a Brinks employee shot an air soft gun in Mr. Becker's vicinity. (*Id.*) The employee did not aim the air soft gun at Mr. Becker. (*Id.*) Later, there was another incident involving employees and the air soft gun, resulting in Brinks taking disciplinary action against the offending employees. (*Id.*) During this time, Mr. Becker never complained or otherwise informed Mr. Gardner that Mr. Becker was experiencing any adverse effects from the incidents. (*Id.*)

During Mr. Becker's employment with Brinks, Brinks had in place an Equal Employment Opportunity Policy (hereinafter "EEOP"), which prohibited discrimination based on disability,

2

among other things.  (*Id.*)  The policy was conspicuously posted at the Salt Lake Armored Branch.  (*Id.*)  Also during Mr. Becker's employment with Brinks, Brinks had a Direct Access Procedure (hereinafter "DAP"), which was summarized in the Brinks employee handbook Mr. Becker had received.  (Doc. 33-1.)  This procedure allowed an employee to report perceived discrimination to Brinks' Human Resources Department.  (*Id.*)  If perceived discrimination was reported, Brinks then commenced an investigation into the allegation.  (*Id.*)  In addition, Brinks regularly held Speak-Out Sessions at all Brinks branches, where employees could present questions and problems to management.  (*Id.*)  Brinks also had an Employee Appeal Procedure whereby an employee could appeal decisions up to the corporate Vice President.  (*Id.*)

Before Mr. Becker was terminated from working at Brinks, he was given several disciplinary warnings.  (Doc. 33-3.)  In February 2003, Brinks disciplined Mr. Becker for failing to fulfill his responsibility to arm security systems on two separate occasions.  (*Id.*)  In October 2004, Brinks disciplined Mr. Becker for failing to remove liability from the vault as instructed, which resulted in significant additional shipping costs.  (*Id.*)  Then, in June 2005, Brinks again disciplined Mr. Becker for his failure to follow procedures regarding identifying the destination and identity of shipments.  (*Id.*)

On January 27, 2007, Defendant Alden Archibald rode with Mr. Becker as an observer.  (Doc. 33-2.)  During that ride, Mr.

Archibald noted several violations of procedure that put others at risk. (*Id.*) When Mr. Archibald told Mr. Becker about the violations, Mr. Becker responded by saying, "This is the way I have always done it" and "If you would like to take me off Saturdays, that is fine, I can just work evenings in the vault." (*Id.*)

Following the January 27 ride, Mr. Archibald (1) gave Mr. Becker verbal warnings, (2) prepared a Disciplinary Memorandum, and (3) planned to advise Mr. Becker that he was being removed from his vehicle until he complied with Brinks' procedures. (*Id.*) Shortly after his performance evaluation with Mr. Archibald, Mr. Becker informed Brinks that he was going to take off work for a few days in connection with a surgery relating to a non-work related condition. (Doc. 33-3.)

The day after the ride with Mr. Archibald, on January 28, 2007, Mr. Becker contacted Liberty Mutual, Brinks' insurance company for Short Term Disability (hereinafter "STD") and Family and Medical Leave Act (hereinafter "FMLA") programs, to request STD benefits and/or FMLA leave. Mr. Becker claimed to suffer from post-traumatic stress disorder (hereinafter "PTSD"). (*Id.*) Liberty Mutual denied Mr. Becker's request because of his part-time status and hours of service, and informed him that he could appeal the decision within ten days. Mr. Becker did not appeal Liberty Mutual's denial. (*Id.*)

On February 2, 2007, Mr. Archibald requested that Mr. Becker come in to the office to discuss the Disciplinary Memorandum regarding Mr. Becker's performance (Doc. 33-2). Mr. Becker never responded to the request. (*Id.*) After seventeen days of not receiving a response from Mr. Becker, it was determined that Mr. Becker had abandoned his position with Brinks. (*Id.*) As a result, on February 19, 2007, Brinks terminated Mr. Becker's employment. (Doc. 33-3.)

Mr. Becker did not report any discrimination to Brinks based on PTSD before he was terminated from Brinks. (*Id.*, ¶ 11.)

On June 8, 2009, Mr. Becker filed his Complaint in this case, and the case was assigned to United States District Judge Dale A. Kimball. (Doc. 1.) In his Complaint, Mr. Becker claims employment discrimination, alleging he was terminated because he suffers from PTSD, which he suffers from as a result of the air soft gun shooting incidents. Further, it appears that Mr. Becker also alleges that Brinks was negligent in its actions after the air soft gun shooting incidents and that Brinks encouraged a hostile work environment.

On June 10, 2009, Judge Kimball referred this case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. 4.) On May 18, 2010, Defendants filed the Motion for Summary Judgment that is currently before the Court. (Doc. 32.) Mr. Becker filed his response to Defendants' motion on August 9, 2010. (Doc. 37.) On August 20, 2010, Defendants

filed a reply to Mr. Becker's response. (Doc. 38.) On November 16, 2010, the Court held oral arguments on the motion. (Doc. 42.)

**ANALYSIS**

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view all evidence and draw all reasonable inferences therefrom in the light most favorable to Mr. Becker, the nonmoving party. *See Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006).

"Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). "Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but 'must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)). "'The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is "genuine"; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could

find in favor of the nonmovant.'" *Id.* (quoting *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997)).

Mr. Becker is proceeding pro se. As a result, the Court construes his complaint liberally. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). However, "[t]his liberal treatment is not without limits." *Id.* Mr. Becker must still abide by the Federal Rules of Civil Procedure, including properly contesting Defendants' summary judgment motion. *See* Fed. R. Civ. P. 56(e)(2) (providing that a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial"); *Kay*, 500 F.3d at 1218 (providing that "pro se parties [must] follow the same rules of procedure that govern other litigants").

In their motion for summary judgment, Defendants allege that Mr. Becker has failed to provide evidence to show there exists "a sufficient disagreement to require submission to a jury." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir. 1988). The Court addresses Defendants' arguments by examining the three causes of action Mr. Becker sets forth in his Complaint.

## I. First Cause of Action

Mr. Becker sets forth the following statement as his first cause of action:

> *Failure by defendant BRINKS by the inaction of management to appropriately investigate and report criminal actions perpetrated by co-workers in two (2) separate workplace events, that occurred during employment hours and at defendant BRINKS' workplace, resulting in severe distress and injury to the plaintiff.*

(Doc. 1, at 4.) Although Mr. Becker fails to state a specific cause of action, it appears, as Defendants explain, that he means to assert a claim of negligence.

For a claim of negligence to succeed, the plaintiff must show that a duty of care between the plaintiff and the defendant existed. *See Lopez v. United Automobile Ins. Co.*, 222 P.3d 1192, 1194-95 (Utah Ct. App. 2009). The existence of a duty is a question of law. *See id.* at 1194.

Mr. Becker has not presented any legal authority requiring an employer to report potentially criminal conduct to law enforcement. Furthermore, neither the Court nor Defendants have found such authority. (*See* Doc. 33, at 6.) As a result, because Mr. Becker cannot show a negligence claim's required element of duty between the plaintiff and defendant, Mr. Becker's claim cannot succeed. Therefore, the Court recommends that summary judgment be granted as to Mr. Becker's negligence claim.

## II. Second Cause of Action

Mr. Becker sets forth his second cause of action as the following:

> *Failure, negligence and conspiracy by defendant BRINKS to appropriately reprimand and remedy the behavior of the perpetrators of the shooting events, and by not immediately and properly notifying, and reporting the incidents to: law enforcement; the Industrial Commission of the State of Utah; and other corporate personnel in national risk management and human resources; resulting in discriminatory conduct against the plaintiff and a hostile work environment.*

(Doc. 1, at 6.) Thus, in this second cause of action, Mr. Becker appears to be alleging that Defendant Brinks was negligent in the way they responded to the air soft gun incidents, and that a hostile work environment was created or allowed to exist.

### A. Alleged Negligence

First, as part of his second cause of action, Mr. Becker alleges that Defendants were negligent in not reporting the air soft gun shooting incidents to several entities, including law enforcement, the Industrial Commission of the State of Utah, and other Brinks corporate personnel. As discussed in Section I above, a required element of negligence is the existence of a duty, see *Lopez*, 222 P.3d at 1194-95, and Mr. Becker has not provided support establishing Defendants had a duty to Mr. Becker in remedying the shooting incidents.[1]

---

[1] Furthermore, as Defendants explain, even if a duty existed, Mr. Becker has failed to show that Defendants breached that duty.

9

### B. Alleged Hostile Work Environment

Second, Mr. Becker also claims that Defendants created a hostile work environment. In order for a hostile work environment claim to survive a motion for summary judgment, a plaintiff must prove "'that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Mackenzie v. Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (citation omitted). In evaluating whether a work environment is sufficiently hostile or abusive, courts look at the following factors: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Id.*

In this case, Mr. Becker has alleged that two incidents occurred within a week of each other involving the air soft guns. Those incidents occurred close to a year before Mr. Becker was

---

Mr. Becker only reported the second air soft gun shooting incident to supervisors, Brinks disciplined the employees who shot the air soft gun in Mr. Becker's vicinity, and after the second (and only reported), May 12, 2006 incident, there were no further problems. Thus, Mr. Becker has not shown that Brinks did not take appropriate action to correct its employees' behavior so that no further incidents occurred.

10

terminated from his job.  In the first incident, Mr. Becker alleges he was shot by a co-worker and his immediate supervisor. Mr. Becker spoke with his immediate supervisor after the incident, but he did not report it.  After the second incident, Mr. Becker reported it to his supervisors.  (Doc. 1, at 4-5.) After reporting the second incident, Brinks supervisors disciplined those employees involved in the incident and another incident did not occur.

During the second incident (the one he reported to supervisors), the employees did not aim at or physically injure Mr. Becker.  (Doc. 33-3.)  Mr. Becker has not alleged any other incidents to support his claim of a hostile work environment.  As a result, the Court concludes that Mr. Becker has not presented evidence by which an objective, rational jury would find that his workplace was "permeated" with discriminatory intimidation, ridicule, and insult toward him.  *See Mackenzie*, 414 F.3d at 1280.

Because Mr. Becker failed to provide facts sufficient to establish Defendants' negligence in remedying the situation or of a hostile work environment, the Court recommends that summary judgment be granted as to count two of Mr. Becker's Complaint.

### III.  Count III

Mr. Becker sets forth his third cause of action as follows:

> *As a direct result of the events of May 5 and 12, 2006, and the subsequent conspiratorial actions of the defendants that resulted in*

> *discriminatory conduct against the plaintiff and a hostile work environment, plaintiff suffered a significantly debilitating psychological injury (PTSD), which was communicated to him as the grounds for his termination and for which no accommodation for ongoing employment was offered.*

(Doc. 1, at 6.) Thus, Mr. Becker alleges in his third cause of action that (1) he suffers from PTSD as a result of Defendants' "discriminatory conduct" toward him and a hostile work environment, and (2) employment discrimination based on his PTSD.

First, Mr. Becker claims he suffers from PTSD as a result of "discriminatory conduct" and a "hostile work environment." The Court has just discussed Mr. Becker's allegation of a hostile work environment and concluded that Mr. Becker has not established a successful hostile work environment claim. The Court examines Mr. Becker's claim of Defendants' alleged "discriminatory conduct" below and concludes that Mr. Becker has failed to meet his burden of showing Defendants engaged in discriminatory conduct toward him as a result of his PTSD.[2]

Second, Mr. Becker alleges employment discrimination because of his PTSD. Mr. Becker cites Title VII of the Civil Rights Act of 1964 as the basis of his Complaint. (Doc. 1, ¶ 1.) Title VII

---

[2] In his Complaint, Mr. Becker states that he was targeted in the air soft gun shooting incidents because of his age. Mr. Becker has not presented any evidence establishing this mere allegation. Further, Defendants have presented an affidavit to the Court stating that Mr. Becker was not targeted in the air soft gun incidents, and Mr. Becker has not presented any evidence refuting that statement.

12

prohibits discrimination of an employee based on race, color, religion, sex, or national origin, *see Baker v. Weyerhaeuser Co.*, 903 F.2d 1342, 1344 (10th Cir. 1990), and Mr. Becker is not claiming disability on any of those grounds. Instead, Mr. Becker is claiming discrimination on the basis of a disability. As such, as Defendants have set forth in their pleadings, Mr. Becker's claim for disability discrimination more properly falls under the Americans with Disabilities Act (hereafter "ADA").

For Mr. Becker's ADA claim to succeed, he must prove the following elements: (1) that he is a disabled person within the meaning of the ADA; (2) that "with or without reasonable accommodation" he is qualified "to perform the essential functions of the job held or desired"; and (3) that his termination was the result of discrimination toward his PTSD. *Mackenzie*, 414 F.3d at 360-61, 1274.

First, Mr. Becker must show that he is a disabled person as defined by the ADA. In order to qualify as a disability under the ADA, Mr. Becker must show that his disability substantially limits a major life activity. *See Deghand v. Wal-Mart Stores, Inc.*, 926 F. Supp. 1002, 1011-12 (D. Kan. 1996). Mr. Becker has not plead with any specificity how his PTSD substantially limits a major life activity. Mr. Becker has supported his claim merely by submitting records from his physicians diagnosing him with PTSD. Such information does not prove that his PTSD limits a

work activity; instead, it only shows that he has been diagnosed with PTSD. *See id.*

Second, on summary judgment, Mr. Becker has not submitted any affidavits or evidence of any kind showing that he was qualified to perform his work duties with or without reasonable accommodation.[3] Thus, Mr. Becker has not proven the second element of his ADA claim.

Third, Mr. Becker has not presented evidence showing that he was terminated from his job because of his PTSD. On the other hand, Defendants have submitted affidavits supporting Defendants' assertion that Brinks terminated Mr. Becker because of job abandonment, not disability. (Doc. 33-3, ¶¶ 12, 15.) As set forth above, after his observational ride with Mr. Becker, Mr. Archibald contacted Mr. Becker requesting that he come to Mr. Archibald's office to discuss disciplinary measures for Mr. Becker's failure to comply with Brinks' procedures. (Doc. 33-2, ¶ 5.) Mr. Becker never responded to Mr. Archibald's request. (Doc. 33-3, ¶ 12.) After several weeks went by without Mr.

---

[3] As set forth in the Background section above, Mr. Archibald rode with Mr. Becker on January 27, 2007, to observe how Mr. Becker performed his work duties. During that ride, Mr. Archibald noted that Mr. Becker violated several of Brinks' procedures, putting others at serious risk. When informed of these violations, Mr. Becker expressed no desire to change how he drove the truck, but instead said that Mr. Archibald could remove him from driving and assign him simply to work in the vault. (Doc. 33-2, ¶ 3.) If anything, this experience demonstrates that Mr. Becker was at least unwilling - and perhaps even not qualified - to perform his employment duties with or without reasonable accommodation.

14

Becker contacting Brinks, Brinks concluded that Mr. Becker had abandoned his job.

In addition, Mr. Becker never informed Defendants of his PTSD; as such, Defendants did not even know about Mr. Becker's alleged disability until after he was terminated. Thus, they could not have terminated him because of his PTSD when they were not even aware of it.

Furthermore, rather than contacting Defendants and informing them of his condition, Mr. Becker contacted Defendants' short term disability insurance carrier, Liberty Mutual. As discussed above, Liberty Mutual denied Mr. Becker's claim. (Doc. 33-3, ¶¶ 13, 14.)

Also, Mr. Becker did not take advantage of any of the methods set forth above that Brinks had in place for him to report his alleged disability. First, Defendants had an EEOP which prohibited discrimination based upon liability, among other things. (Doc. 33-1, ¶ 4; Doc. 33-3, ¶ 6.) The EEOP was conspicuously posted at the Salt Lake Armory Branch where Mr. Becker worked, but Mr. Brinks did not report a violation of the EEOP. (Doc. 33-3, ¶ 6.) Second, Defendants had a DAP which allowed employees to report discrimination to the Brinks Human Resources Department. (Doc. 33-1, ¶ 5.) Mr. Becker never reported a violation using the DAP. Third, Mr. Becker did not voice his concerns or grievances at Defendants' Speak-Out Sessions, which provided employees an opportunity to inform

management of concerns and problems in the workplace. (Doc. 33-1, ¶ 6.) These sessions were held at the Salt Lake Armory Branch during Mr. Becker's employment with Brinks. (*Id.*)

Instead of taking advantage of these three opportunities to voice his allegations, Mr. Becker refused to comply with Mr. Archibald's request to come in to the branch to discuss disciplinary matters. Defendants have explained that Mr. Becker's refusal to so comply was the only reason Mr. Becker was terminated.

As a result, the Court concludes that Mr. Becker has not met the requirement of a successful ADA claim: he has not presented evidence showing: (1) that he is a disabled person within the meaning of the ADA, (2) that he was qualified to perform the essential functions of the job held or desired with or without reasonable accommodation, and (3) that he was terminated from his job because of his alleged disability. Mr. Becker presents records by physicians that provide Mr. Becker has PTSD; those records do not support the claim that Mr. Becker's PTSD has made Mr. Becker disabled. Thus, the physician records are legally insufficient to support Mr. Becker's claims.

Because Mr. Becker has not provided the Court with evidence supporting his claims, his case lacks merit. Consequently, Defendants' summary judgment motion should be granted.

**RECOMMENDATION**

Based on the analysis above, **IT IS RECOMMENDED** that the court **GRANT** Defendants' Motion for Summary Judgment (Doc. 32).

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within fourteen (14) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 8th day of December, 2010.

BY THE COURT:

_____
Samuel Alba
United States Magistrate Judge